IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| ROBERT H. HIRSCH, ) | |
| ) | |
| Defendant. ) | Case No. 10 C 5484 |
| ) | |
| ROBERT H. HIRSCH, ) | Judge Virginia M. Kendall |
| ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITIBANK, N.A., ) | |
| ) | |
| Third Party Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Fifth Third Bank ("Fifth Third") brought suit against Defendant Robert H. Hirsch ("Hirsh"), individually and doing business as Law Offices of Robert H. Hirsch, seeking damages that arose from Hirsch presenting a defective cashier's check to Fifth Third. Hirsch moved to join Citibank N.A. ("Citibank") as an indispensable third party under Federal Rule of Civil Procedure 19 and this Court denied that motion. Hirsch then filed a one-count Third Party Complaint against Citibank for failing to comply with Illinois law's midnight rule, which makes payor banks liable for not timely dishonoring counterfeit checks. Citibank moves to dismiss the Third Party Complaint under Rule 12(b)(6) for failing to state a claim upon which relief can be granted. Citibank also seeks sanctions against Hirsch for asserting a frivolous claim against it. For the following reasons, the Court grants the Motion to Dismiss and denies the Motion for Sanctions.

## BACKGROUND

At this initial stage, the Court takes the allegations asserted in the Third Party Complaint as true. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Hirsch relies extensively on the allegations Fifth Third made against him in the original lawsuit to shape his claim against Citibank.

Hirsch, an attorney, received an email from Ms. Julie Kobayashi ("Kobayashi") on May 5, 2010, indicating that she was interested in having him represent her in a marital dispute. (Third Party Compl. ¶ 10.) Hirsch never met Kobayashi and based on email communications agreed to represent her in enforcing a settlement agreement against her ex-husband, Michael Newberg ("Newberg"). (*Id.* ¶ 12.) Hirsch eventually received a $298,500 cashier's check, supposedly from Newberg, to be drawn on Citibank. (*Id.* ¶ 15.) Kobayashi instructed Hirsch to wire transfer $269,500 of the funds to a Japanese bank and keep $29,000 as payment for his representation. (*Id.* ¶ 17.)

On June 3, 2010, Hirsch deposited the $298,500 cashier's check into his IOLTA client trust account at a Fifth Third Bank in Chicago, Illinois. (*Id.* ¶ 18.) Later that day Fifth Third provisionally credited Hirsch's account. (*Id.* ¶ 19.) Hirsch executed Kobayashi's wire transfer instructions on June 5, directing Fifth Third to wire $269,500 from his Fifth Third account to the Japanese bank. (*Id.* ¶ 20.) As part of the Wire Transfer Agreement between Hirsch and Fifth Third, when asked if the wire transfer was being sent to someone he met over the internet, Hirsch answered "no." (*Id.* ¶ 21.)

Fifth Third wired these funds to the Japanese bank on Monday, June 7, and that evening Citibank sent Fifth Third notification that the cashier's check was counterfeit. (*Id.* ¶¶ 22, 23.) Fifth Third received this notification on the morning of June 8, but this was too late to reverse the wire

transfer. (*Id.* ¶¶ 24, 25.) Hirsch claims that Citibank received the counterfeit check on Friday, June 4, and untimely sent its notification that the check was defective on Monday, June 7 because, under the "midnight rule," it should have been done by Saturday, June 5. (*Id.* ¶ 39.)

## STANDARD OF REVIEW

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.* Dismissal under Rule 12(b)(6) is appropriate for complaints that "do not state legally cognizable claims, including the situation in which the plaintiff pleads himself out of court by making allegations sufficient to defeat the suit." *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007); *Thompson v. Ill. Dep't of Professional Regulation*, 300 F.3d 750, 753-54 (7th Cir. 2002).

## DISCUSSION

**I.    Midnight Rule Claim**

Citibank moves to dismiss the Third Party Complaint because the allegations establish that Citibank dishonored the counterfeit check within the time period required under the "midnight rule."

Under Illinois law, the "midnight rule" sets forth the time requirements for a payor bank to

3

send a notice of dishonor for a faulty instrument. To appropriately dishonor the cashier's check (and escape liability for the amount of the check), Citibank had to send Fifth Third a notice of dishonor before midnight "on the *next banking day* after the *banking day* on which [Citibank] received the check." *Oak Brook Bank v. Northern Trust Co.*, 256 F.3d 638, 639 (7th Cir. 2001) (emphasis added); *see* 810 ILCS 5/4-302(a)(1), 5/4-104(a)(10). Here, the Third Party Complaint, by alleging that the "midnight deadline" for Citibank was Saturday, June 5, 2010, implies that Citibank received the counterfeit check on Friday, June 4. Hirsch's response brief also specifically notes that the Federal Reserve Bank sent the faulty check to Citibank on June 4. According to the midnight rule, Citibank therefore had until midnight on the next "banking day" to send its notice of dishonor, otherwise it would be liable for the value of the check.

The Third Party Complaint alleges that by sending notification of dishonor on the evening of Monday, June 7—three days after receiving the check—Citibank untimely notified Fifth Third that it was dishonoring the check, and as such is liable for the amount of the check. This argument, however, assumes that Saturdays are "banking days," such that a check received on Friday must be dishonored by midnight on Saturday. Under Illinois law, a "banking day" is a day when the bank is "open to the public for carrying on substantially all of its banking functions, *except that any day that is not a banking day for purposes of Federal Reserve Regulation CC (as modified from time to time) shall not be a banking day for purposes of this Article.*" 810 ILCS 5/4-104(a)(3) (emphasis added). Federal Reserve Regulation CC specifically excludes Saturdays and Sundays from its definition of a "banking day." *See* 12 C.F.R. § 229.2(f), (g).

Here, Hirsch's allegations set Friday, June 4 as the date that Citibank received the flawed check. The Third Party Complaint incorrectly alleges that the midnight rule required Citibank to

4

send a notice of dishonor by Saturday, June 5. Rather, Citibank had until midnight on Monday, June 7—the next "banking day" after June 4—to send a notice of dishonor. Hirsch's own allegations specifically state that Citibank sent notification of dishonor on June 7. (R. 27, Third Party Compl. ¶ 35.) The allegations in Hirsch's Third Party Complaint therefore establish that he is not entitled to relief under the theory that Citibank violated the "midnight rule."

To save his claim Hirsch contends that Citibank has not produced documentation supporting exactly when it sent its notice of dishonor. (R. 34, Resp. Mot. Dismiss 5-6.) At the motion to dismiss stage, however, Citibank need only point out the deficiencies within the four corners of the Third Party Complaint, which it has done. That is, Hirsch has effectively pled himself out of court because the allegations he asserts establish that Citibank timely dishonored the counterfeit check.

Finally, Hirsch tries to rely on a copy of the back of the counterfeit check, attached to his response brief, to argue that Citibank "returned" the check to the Federal Reserve Bank on June 9, 2010, two banking days after the expiration of the midnight rule. Because the allegations in the Third Party Complaint do not support such a claim, the Court discards that argument. Similarly, under Illinois law, the counterfeit check need not actually be returned by midnight of the next banking day; sending a notice of dishonor is enough, which is exactly what Citibank did. *See* 810 ILCS 5/4-302(a)(1).

The Court therefore grants Citibank's Motion to Dismiss.

## II.   Sanctions

Citibank asserts that Hirsch did not adequately investigate the factual basis for his claim by simply adopting in his Third Party Complaint the allegations made by Fifth Third against him in the underlying lawsuit. Hirsch's Third Party Complaint, Citibank maintains, is also the product of

5

ineffective legal research because he failed to realize that Saturday and Sunday are not considered "banking days" for applying the midnight rule. As such, Citibank moves for sanctions based on this Court's inherent power and 28 U.S.C. § 1927 ("Section 1927"). Under Section 1927, if an attorney "multiples the proceedings in any case unreasonably and vexatiously," the moving party can obtain costs, expenses, and attorneys' fees incurred as a result. *See* 28 U.S.C. § 1927.

According to Citibank, Hirsch's inadequate pre-filing investigation resulted in the Third Party Complaint having factual and legal deficiencies, which multiplied the proceedings against Citibank in a "unreasonable and vexatious" way. Section 1927, however, is not a mechanism for awarding sanctions based on a party's failure to reasonably investigate a particular filing; Rule 11 serves that purpose. *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990) ("Section 1927 and Rule 11 are addressed to different conduct: the statute to prolonging litigation, and Rule 11 to particular filings."); *see, e.g., Lewis v. Trans Union LLC*, No. 04 C 6550, 2006 WL 2861059, at *2 (N.D. Ill. Sept. 29, 2006) (Coar, J.) ("reasonable investigation" not required under Section 1927, only "conduct after the suit was instituted is relevant to whether sanctions should be imposed under Section 1927"); *cf. Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720-21 (7th Cir. 2006) (awarding Section 1927 sanctions where plaintiff's attorney filed improper motions *after* district court dismissed the case with prejudice); *Matter of Yagman*, 796 F.2d 1165, 1187 (9th Cir. 1986) ("Section 1927 does not apply to initial pleadings."). Here, Citibank's request for sanctions turns on Hirsch's alleged lack of due diligence before filing the Third Party Complaint. But Section 1927 applies to sanctionable conduct that occurs after the filing of the initial pleading, and encompasses bad faith attempts to multiple proceedings by "dragging them out as well as by filing too many papers." *Samuels*, 906 F.2d

at 275. Section 1927 thus is the improper vehicle for granting sanctions based on Hirsch's alleged failure to reasonably investigate before filing the Third Party Complaint.

Citibank seeks sanctions alternatively based on this Court's inherent authority to punish litigants for abusing the judicial process. To award sanctions under its inherent power, the Court must find that Hirsch "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Although the Court finds that Hirsch's own allegations in his Third Party Complaint fail to state a claim for violation of the midnight rule, the Court, in its discretion, finds that this is not the type of extreme conduct that warrants sanctions.

As such, the Court denies Citibank's Motion to Sanctions.

## **CONCLUSION AND ORDER**

For these reasons, the Court grants Citibank's Motion to Dismiss and dismisses Hirsch's claim against Citibank. The Court also denies Citibank's Motion to Sanctions.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 20, 2011