IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| FIFTH THIRD BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | 10 C 5484 |
| | ) | |
| ROBERT H. HIRSCH, individually and doing | ) | Judge Virginia M. Kendall |
| business as Law Offices of Robert H. Hirsch, | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION AND ORDER**

Robert Hirsch, a sole practitioner of law, deposited into his IOLTA account at Fifth Third Bank a counterfeit cashier's check purportedly drawn on Citibank in the amount of 298,500.00. Hirsch then transferred $269,500.00 of the funds to a bank in Japan. By the time Citibank informed Fifth Third that it would not honor the counterfeit instrument, it was too late for Fifth Third to reverse the transfer, and it sustained a loss in the amount of the transferred funds. According to the Signature Card Agreement which governs Hirsch's IOLTA account and according to the Outgoing Wire Transfer Request Agreement which Hirsch executed with Fifth Third to transfer the funds, Hirsch is liable to Fifth Third for the entire loss plus reasonable attorneys' fees, costs and expenses. Fifth Third brought a four-count Complaint in this Court seeking the lost funds, plus interest, other charges, and expenses incurred by Fifth Third, including reasonable attorneys' fees. Summary judgment is granted on Counts III and IV of Fifth Third's Complaint. Fifth Third is entitled to recover from Hirsch no less than $269,500.00. Fifth Third is also entitled to its reasonable attorneys' fees and additional costs and expenses that it incurred in pursuing its claim and in connection with Hirsch's failure to reimburse Fifth Third.

## I. The Material Undisputed Facts

Because the Defendant did not respond to Fifth Third Bank's Local Rule 56.1 statement of material facts, the following facts are deemed admitted, and all citations are to Fifth Third Bank's 56.1 statement. (Doc. 49). *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.")

Robert H. Hirsch is a sole proprietor of law. (Pl. 56.1 Statement ¶ 3). On or about May 5, 2010, Hirsch received an email from a person identifying herself as Ms. Julie Kobayashi. (*Id.* ¶ 18). Through a series of emails, Kobayashi related to Hirsch that she desired to retain his services in enforcing and executing a settlement agreement between Kobayashi and her purported ex-husband, Michael Newberg. (*Id.* ¶ 20). According to Kobayashi, she was owed approximately $810,000.00 under the settlement agreement. (*Id.*). Hirsch agreed via email to represent Kobayashi in her marital dispute. (*Id.* ¶ 21). After corresponding with Newberg via email, Hirsch received a cashier's check in the amount of 298,500.00. (*Id.* ¶ 23). The cashier's check appeared to be drawn on Citibank, N.A. (*Id.*).

On or about June 3, 2010 Hirsch presented for deposit the cashier's check into his "IOLTA" client trust account at one of Fifth Third's financial centers in Chicago. (*Id.* ¶ 25). An IOLTA account is an interest- or dividend-bearing trust account established in a financial institution for the deposit of nominal or short-term funds of clients. (*Id.* ¶ 8). Every attorney licenced in Illinois is required to maintain an IOLTA account pursuant to Rule 1.15 of the Illinois Rules of Professional Conduct. (*Id.* ¶ 7). In 2007, Hirsch executed a Signature Card Agreement ("Account Agreement") for his IOLTA account. According to the Account Agreement, "[i]n the case of overdraft or

2

overpayment on this account, whether by error, mistake, inadvertence, or otherwise, the amount of such overdraft...shall be immediately paid to the Bank." (*Id*. ¶ 12).

The Account Agreement also states that Hirsch received Fifth Third's Rules and Regulations, Agreements and Disclosures. (*Id*. ¶ 14). Hirsch acknowledged their receipt and agreed to be bound by the terms set forth in the Rules and Regulations, Agreements and Disclosures of Fifth Third Bank. (*Id*.). Section 22 of Fifth Third's Rules and Regulations states that, "[i]f an item is returned as a counterfeit item, altered item, or for any other reason, Customer acknowledges and agrees that they will be liable to the Bank for any loss suffered by the Bank, regardless of any confirmation of availability of funds done by the Bank." (*Id*. ¶ 15). Section 37 of the Rules and Regulations provides that in the event the Bank is forced to initiate any legal proceedings, including for the collection of overdrafts, the customer must reimburse the Bank for all reasonable attorneys' fees to the extent allowed by law. (*Id*. ¶ 16). The section of the Rules and Regulations governing "WIRE TRANSFERS," provides, "*Provisional Payment:* Any credit Bank Gives Customer for a wire transfer is provisional until Bank receives final payment for the amount of the wire transfer. If Bank does not receive final payment for wire transfer, Customer agrees to refund Bank the amount of transfer" (*Id*. ¶ 17).

Hirsch presented the cashier's check for deposit and Fifth Third provisionally credited Hirsch's account with the amount of the cashier's check, $298,500.00. (*Id*. ¶ 26). Hirsch transferred and endorsed the cashier's check to Fifth Third when he presented it for deposit. (*Id*. ¶¶ 27-28). Per Kobyashi's instructions, Hirsch executed an Outgoing Wire Transfer Request Agreement ("Transfer Agreement") directing Fifth Third to wire $269,500.00 from Hirsch's account to a bank located in Japan. (*Id*. ¶¶ 30-31). The Transfer Agreement, signed and dated by Hirsch, states that, "I certify

3

that the information concerning this wire transfer is correct and agree to be bound by the terms and conditions attached to this agreement." (*Id*. ¶ 33). Under those terms and conditions Hirsch "is solely responsible for the content of the request and the accuracy and completeness of the information contained in the request. Bank will rely on the information contained on the request in carrying out [Hirsch's] instructions." (*Id*. ¶ 34).

The Transfer Agreement further provides that Hirsch "agrees to indemnify Bank and hold it harmless (including the payment of reasonable attorneys' fees) from and against all damage, costs, expenses, liability to third parties arising out of, or in connection with, the services provided by the Bank or actions otherwise pursuant to Customer's instructions except where Bank is grossly negligent or engaged in willful misconduct." (*Id*. ¶ 35). The Transfer Agreement requires that the customer answer certain questions before Fifth Third will process the requested transfer. (*Id*. ¶ 36). One of these questions is whether the customer is "wiring these funds to someone you met on the internet who sent you...Cashier's Checks?" (*Id.*). Hirsch answered "no" to this question. (*Id*. ¶ 37).

On June 7, 2010, pursuant to the Transfer Agreement and in reliance on the information Hirsch provided, Fifth Third wired $269,500.00 to a Japanese bank. (*Id*. ¶ 38). Citibank sent a notice to Fifth Third alerting Fifth Third that the cashier's check was counterfeit and that it would not be honored. (*Id*. ¶ 40). However, by the time Fifth Third received Citibank's notice it was too late to reverse the wire transfer. (*Id*. ¶ 41). Within two days of receiving Citibank's notice that the cashier's check was counterfeit, Fifth Third verbally notified Hirsch that the cashier's check had been dishonored. (*Id*. ¶ 42).

On or about June 14, 2010, Fifth Third sent Hirsch a written overdraft notice, informing Hirsch that the amount of the cashier's check had been returned. (*Id*. ¶ 43). Because the cashier's

check was counterfeit it was not honored by Citibank. (*Id*. ¶ 44). Hirsch did not have sufficient other funds to cover the amount of the wire transfer that was subject to the counterfeit cashier's check. (*Id*.). As a result, Hirsch's account was overdrawn by $269,500.00. (*Id*.). By letter dated July 28, 2010, Fifth Third demanded that Hirsch repay the funds sent by Fifth Third pursuant to the Transfer Agreement. (*Id*. ¶ 45). Hirsch has failed and refused to pay the $269,500.00. (*Id*. ¶ 46). His refusal to pay has caused Fifth Third to incur additional damages, including interest, other charges, and expenses incurred in enforcing the Transfer Agreement and the Account Agreement. (*Id*. ¶ 47).

## II. The Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc*., 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, on summary judgment the Court will limits its analysis of the facts to that evidence that is supported by the parties' Local Rule 56.1 statements properly before the Court. *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, for purposes of summary judgment the Court will accept that statement as true. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald

5

assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## III. Discussion

### A. Breach of the Account Agreement

Summary judgment is granted on Count III of Fifth Third's Complaint because Hirsch breached the Account Agreement. The terms of the Account Agreement are clear and unambiguous, and therefore must be given their ordinary meaning. *See Virginia Surety Co., Inc. v. Northern Insurance Company of New York*, 866 N.E.2d 149, 153 (Ill. 2007) ("[t]he cardinal rule is to give effect to the parties' intent, which is to be discerned from the contract language"); *Central Illinois Light Co. v. Home Insurance Co.,* 821 N.E.2d 206, 213 (Ill. 2004) (unambiguous contract terms are to be given their plain, ordinary, and popular meaning). When a contract is unambiguous it controls and must be given effect. *See AAM/US Bank LLC v. Lake Carroll Ass'n (In re County Treasurer)*, 869 N.E.2d 1065, 1087 (Ill. App. Ct. 2007) ("[a]n unambiguous contract must be enforced as it is written."). Contract interpretation is a matter of law that is well-suited to summary adjudication. *See Covinsky v. Hannah Maine Corp.*, 903 N.E.2d 422, 425 (Ill. App. Ct. 2009).

As the facts make clear, Hirsch maintains an IOLTA account with Fifth Third Bank. In connection with this account, Hirsch executed an Account Agreement which requires that Hirsch pay Fifth Third in the case of an overdraft. The Rules and Regulations of Fifth Third, which Hirsch received and agreed to be bound by, provide that Hirsch is liable to Fifth Third for any losses suffered by the return of a counterfeit item. The Rules and Regulations also provide for the recovery of reasonable attorneys' fees if Fifth Third has to commence an action to recover any losses, including for the recovery of an overdraft. Additionally, the section on wire transfers states that any

6

credit extended to a customer, such as Hirsch, is only provisional until Fifth Third receives final payment, and that the customer must refund the Bank for the amount of the transfer if final payment is not received.

Hirsch deposited the $298,500 Citibank cashier's check into his account and was provisionally credited with that amount. Pursuant to the Transfer Agreement entered into between Hirsch and Fifth Third, Fifth Third wired $269,500 from Hirsch's account to a bank in Japan. The cashier's check was counterfeit and was dishonored by Citibank. Hirsch's account became overdrawn, and Fifth Third lost the $269,500.00.

Fifth Third, for its part, honored its obligations under the Account Agreement by provisionally crediting Hirsch's account with the funds and then by wiring a portion of them to Japan. By contrast, Hirsch has breached his obligations under the Account Agreement by not making Fifth Third whole for the loss it suffered. Hirsch owes Fifth Third $269,500.00 plus Fifth Thirds reasonable attorneys' fees incurred in collecting the debt.

*B. Breach of the Transfer Agreement*

Summary judgment is also granted on Count IV of Fifth Third's Complaint because Hirsch breached the terms of the Transfer Agreement. The terms of the Transfer Agreement clearly and unambiguously state that Hirsch must indemnify Fifth Third and hold it harmless "from and against all damage, costs, expenses, and liability to third parties arising out of, or in connection with, the services provided by Bank or actions otherwise pursuant to Customer's instructions..." Furthermore, under the Transfer Agreement, Hirsch is solely responsible for the correctness and completeness of the wire transfer information, upon which Fifth Third relies.

On or about June 5, 2010, Hirsch directed Fifth Third to transfer the funds by executing the

Transfer Agreement. Fifth Third then transferred the funds. Among the questions relied on by Fifth Third in entering the Agreement was whether Hirsch was wiring funds to someone he met on the internet. Although Hirsch met Kobyashi on the internet, he answered in the negative. Fifth Third has upheld its obligations under the Transfer Agreement to transfer the funds to a bank in Japan. Hirsch has breached his obligations under the Agreement by not indemnifying Fifth Third for the losses it sustained as a result of his actions. Under the Transfer Agreement, Hirsch is liable to the Bank for the $269,500.00 loss, plus attorneys' fees and the costs and expenses arising out of the transfer.

**IV. Conclusion**

Fifth Third Bank's Motion for Summary Judgment is granted on Counts III and VI of its Complaint. Judgment is entered in the amount of $269,500, plus attorneys' fees, costs and expenses. Counts I and II are dismissed as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: November 8, 2011